```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

FELIPE PASTOR,

       Petitioner,

v.                                    Case No: 2:17-cv-724-FtM-29MRM

SECRETARY, DEPARTMENT OF
CORRECTIONS, Julie Jones, in
her official capacity and
FLORIDA ATTORNEY GENERAL,

       Respondents.
_____/

## OPINION AND ORDER

Before the Court are Petitioner Felipe Pastor's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. #1), Respondent's Response (Doc. #12), and Pastor's Reply (Doc. #14).  For the reasons set forth below, the Petition is denied.

**I.    Background**

Felipe Pastor (Pastor) was charged by Amended Information with two counts of Sexual Battery for penetrating the vagina of a nonconsenting victim (whose name is redacted throughout the record) with his penis (Count 1) and finger (Count 2).  (Doc. #13-1 at 2).  Pastor pled not guilty, and the case was tried before a jury.  Pastor was represented by Assistant Public Defender Shakia Burnham.

At trial, the victim testified as follows: Pastor and three other men rented two rooms in her home for about nine months during 2012 and 2013. (Id. at 240). On March 2, 2013, the victim was cooking dinner when Pastor told her there was something she needed to see in the bathroom. (Id. at 242). When she walked over, Pastor grabbed her, carried her into his room, and closed the door. (Id. at 243-44). The victim screamed and pushed Pastor, but she was unable to get away. (Id. at 244-45). At one point, she hit Pastor in the head with a remote control. (Id. at 246).

While the victim resisted, Pastor pushed her onto the bed, removed her pants and underwear, and removed his own shorts and underwear. (Id. at 245). Pastor forced her legs apart and penetrated her vagina with his finger. (Id. at 247). He then removed his finger and penetrated the victim with his penis. (Id. at 248). The victim resisted throughout the assault, which lasted about five minutes. (Id. at 249). The victim did not know if Pastor ejaculated. (Id. at 249).

When Pastor stopped, the victim got dressed, went to her bedroom, and called the police. (Id. at 250). An ambulance took the victim to the hospital and to another facility where she was examined and photographed. (Id. at 253). The victim's injuries included multiple scratches, a broken shoulder, and discomfort while urinating. (Id. at 254).

The state elicited testimony from four law enforcement officers who participated in the investigation. They all said the victim was visibly upset on the night of March 2, 2013. The first to arrive on the scene was Lee County Deputy Sheriff Ryan McKinnon. The victim answered the door, and Deputy McKinnon entered the house and found Pastor—who appeared intoxicated—in the back bedroom. (Id. at 164). McKinnon escorted Pastor to the front porch and waited for Fort Myer police to arrive. Officer Jonathan Clausnitzer arrived on the scene and took Pastor into custody. (Id. at 172). Detective Nicole Thomas led the investigation. She observed that the victim's injuries appeared minor at first and became more pronounced as the night progressed. (Id. at 205). She and the other officers gathered clothing and DNA samples for testing.

The nurse who performed a sexual assault examination on the victim on the morning of March 3, 2013, also testified at trial. She found fresh abrasions on the victim's body and a fresh tear on the inside of the victim's vagina. (Id. at 272-75). She found semen in the victim's vagina and collected a sample for testing. (Id. at 281).

Finally, the state presented testimony from Melissa Lavigno, a crime lab analyst who tested the evidence related to the case. (Id. at 288). She matched the foreign DNA gathered from the victim's vagina with the victim's partner, Enrique Morales, and

she testified that semen can stay alive in a vagina for five days. (Id. at 303). The victim had previously testified that she had sex with Morales days before the assault. (Id. at 255). Lavigno found two sets of DNA on the inside of Pastor's shorts. Pastor was the major contributor of the DNA. (Id. at 306). Lavigno developed a partial profile of the other DNA found on the shorts, and it matched the victim. (Id.).

After the state closed its case, Pastor moved for acquittal, which the Court denied. (Id. at 322). Pastor did not present any evidence. The jury found Pastor guilty on both counts. (Id. at 382-83). The Court sentenced Pastor to 180 months incarceration for Count 1 and 63 months and 12 days for Count 2. (Id. at 387-89).

Pastor's appointed appellate counsel found no significant reversible error and filed a brief under Anders v. California, 386 U.S. 738 (1967). The Anders brief raised two issues: (1) whether the trial court erred by denying the motion for judgment of acquittal; and (2) whether the trial court erred in sentencing Pastor. (Id. at 415). Pastor raised an additional ground in a pro se brief: whether the trial court erred when it removed a juror who appeared to fall asleep during trial. (Id. at 431). The appellate court affirmed without a written opinion. (Id. at 446).

On November 19, 2015, Pastor filed a Petition for Writ of Habeas Corpus in state court. (Id. at 448). It presented the

4

same three issues raised on appeal. The court treated the petition as a motion for postconviction relief under Rule 3.850 and denied it. (Id. at 482). Pastor appealed the denial, and the appellate court affirmed without a written opinion. (Id. at 547). Pastor then timely filed his habeas petition in this Court.

## II.  Applicable Habeas Law

### a. AEDPA

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States

Supreme Court when the state court issued its decision. White, 134 S. Ct. at 1702; Casey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the

correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." Sexton v. Beaudreaux, 138 S. Ct. 2555, 2558 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

### b. Exhaustion and Procedural Default

AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief available under state law. Failure to exhaust occurs "when a petitioner has not 'fairly presented' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Pope v. Sec'y for Dep't. of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim

or a similar state law claim. Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).

> Procedural defaults generally arise in two ways:
>
> (1) where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred; or (2) where the petitioner never raised the claim in state court, and it is obvious that the state court would hold it to be procedurally barred if it were raised now.

Cortes v. Gladish, 216 F. App'x 897, 899 (11th Cir. 2007). A federal habeas court may consider a procedurally barred claim if (1) petitioner shows "adequate cause and actual prejudice," or (2) if "the failure to consider the claim would result in a fundamental miscarriage of justice." Id. (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991)). Another gateway through a procedural bar exists for claims of ineffective assistance of trial counsel. If the state court did not appoint counsel in the collateral proceeding, or if collateral-review counsel was ineffective, a petitioner may overcome procedural default by "demonstrate[ing] that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez v. Ryan, 566 U.S. 1, 13 (2012).

### III. Analysis

#### a. Grounds One and Two

In Ground One, Pastor argues the trial court erred in denying his motion for acquittal because the state failed to prove its charges beyond a reasonable doubt. In Ground Two, Pastor argues the trial court erred in sentencing him because he was convicted on insufficient evidence. Both grounds are based on Pastor's assertion that the scientific evidence conflicts with the "direct evidence" because "DNA found in the alleged victim belongs to her husband Mr. Morales Ordonez and another male, but without a doubt not to [Pastor]."[1] (Doc. #1 at 4). Pastor raised this ground on direct appeal and in his postconviction motion.

A federal habeas petitioner is entitled to relief "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). That is not the case here. The victim described the sexual assault in detail and identified Pastor as her attacker. The victim's testimony was corroborated by four law enforcement officers and the nurse who examined her. The victim's documented injuries were consistent with her story, and a partial match of her DNA was found

---

[1] The record refutes Pastor's claim of DNA from "another male." The only foreign DNA found in the victim's vagina matched Morales.

on the inside of Pastor's shorts. The presence of Morales' DNA and the absence of Pastor's DNA in the victim's vagina did not undermine the state's case. The victim acknowledged she had sex with Morales days before the rape, and she did not know whether Pastor ejaculated.

The evidence presented at trial was sufficient to support a guilty verdict. And because the conviction was constitutionally sound, the trial court did not err by sentencing Pastor. Pastor is not entitled to relief for Grounds One or Two.

### b. Grounds Three and Seven

Grounds Three and Seven rehash Ground One. In Ground Three, Pastor argues the DNA evidence exonerates him. And in Ground Seven, Pastor asserts the DNA evidence proves the victim lied. But neither claim is true. The recovery of Morales's DNA from the victim's vagina, and the absence of Pastor's DNA, does not prove Pastor's innocence. As explained above, the DNA evidence is consistent with the victim's testimony that Pastor raped her on March 2, 2013, that she did not know whether Pastor ejaculated, and that she had sex with Morales days before. Pastor is not entitled to relief for Grounds Three or Seven.

### c. Grounds Four, Five, and Six

In Ground Four, Pastor argues his trial counsel failed to investigate the other four men living in the house where the crime occurred and present evidence that one of the victim's children

10

reported "hearing his mother scream because his mom was being assaulted by some friend called 'Meme', who lived in the same house." (Doc. #1 at 8). Ground Five complains of suppression of exculpatory evidence but does not state what evidence was supressed. Similarly, Ground Six accuses the state of withholding evidence that could have impeached its witness, but Pastor does not identify the evidence or the witness. Giving the Petition a liberal construction, the Court presumes Grounds Five and Six refer to the evidence referenced in Ground Four.

Pastor procedurally defaulted on Grounds Four, Five, and Six. Pastor failed to exhaust these grounds because he did not properly raise them in state court. Pastor made similar points in the body of his appellate briefs, but he did not identify them as independent issues that he wanted the appellate court to review. Florida courts of appeal do not address issues not clearly set out in the issues of appeal. Emergency Physicians-Kang and Assocs., M.D., P.A. v. Parker, 800 So. 2d 631, 636 (Fla. 5th DCA 2001); see also McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.").

Ordinarily, federal courts dismiss habeas petitions that contain unexhausted claims so the petitioner can present the claims to the proper state court. See Rose v. Lundy, 455 U.S. 509 (1982).

11

But when such presentation would be futile because the unexhausted claims are procedurally barred by state rules, a federal habeas court should treat the claims as procedurally defaulted. Collier v. Jones, 910 F.2d 770, 773 (11th Cir. 1990). Florida Rule of Criminal Procedure 3.850 required Pastor to raise his claims within two years of his judgment and sentence.[2] That deadline passed about five years ago, so allowing Pastor to present Grounds Four, Five, and Six to Florida courts would be futile. Thus, the grounds are procedurally barred from federal habeas consideration. See Bailey v. Nagle, 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.").

Pastor cannot overcome this procedural default. He has not attempted to show, nor does the record support, "adequate cause and actual prejudice" or that these grounds must be considered to prevent a fundamental miscarriage of justice. See Cortes, 216 F. App'x 897 at 899. And while Pastor did not have counsel in his post-conviction review, he has not demonstrated that Grounds Four, Five, or Six have merit. See Martinez, 566 U.S. at 13. Evidence

---

[2] Rule 3.850 lists three exceptions to the two-year deadline, but none apply here.

that the victim's child heard another man assault her at some time in the past does not undermine the victim's testimony that Pastor raped her on March 2, 2013. Such evidence certainly is not exculpatory.

Grounds Four, Five, and Six are dismissed as unexhausted and procedurally barred.

### IV. Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (citations omitted). Pastor has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is

**ORDERED:**

13

1. Petitioner Felipe Pastor's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. #1) is **DENIED**.
2. The Clerk shall enter judgment, terminate all motions and deadlines, and close the file.

**DONE and ORDERED** in Fort Myers, Florida on this 5th day of January 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA:        FTMP-1
Copies:    Petitioner and Counsel of Record